**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| DIAMOND LAW CENTER, LLC<br>150 N. RADNOR CHESTER ROAD<br>SUITE F200<br>RADNOR, PA 19087, | Case No. |
|     Plaintiff, | |
|        v. | |
| FORECLOSURE SECRETS CORP. d/b/a<br>FORECLOSURE ACADEMY<br>2232 DELL RANGE BOULEVARD<br>SUITE 245-3629<br>CHEYENNE, WY 82009, | |
| PRIVATE WEALTH ACADEMY<br>401 E. 8TH STREET<br>SIOUX FALLS, SD 57103, | |
| ZACHARY MILLER<br>2406 STONE VIEW DRIVE<br>SPARKS, NV 89436-4646, | |
| ROAS PARTNERS<br>2232 DELL RANGE BOULEVARD<br>SUITE 245-3629,<br>CHEYENNE, WY 82009 | |
| and | |
| MICHAEL DEAN ESPERAS<br>856 S. COTTONTAIL LANE<br>ANAHEIM, CA 92808-1409, | |
|     Defendants. | |

## <u>COMPLAINT</u>

Plaintiff Diamond Law Center, LLC ("Diamond Law") brings this Complaint against

Defendants Foreclosure Secrets Corp. d/b/a Foreclosure Academy ("Foreclosure Academy"),

Private Wealth Academy ("PWA"), Zachary Miller, ROAS Partners ("ROAS") and Michael

Dean Esperas (collectively, Foreclosure Academy, PWA, Mr. Miller, ROAS and Mr. Esperas

referred to herein as "Defendants") for their misappropriation and theft of Diamond Law's

intellectual property and pervasive misrepresentation of Diamond Law's images, courses and

accomplishments as their own and, in support thereof, avers as follows:

## THE PARTIES

1.      Plaintiff Diamond Law is a limited liability company organized and existing

under the laws of the State of Nevada and it maintains a principal office located at 150 N.

Radnor Chester Road, Suite F200, Radnor, PA 19087.

2.      Defendant Foreclosure Academy is a for-profit corporation registered as

Foreclosure Secrets Corp. in Wyoming with a principal office address located at 2232 Dell

Range Boulevard, Suite 245-3629, Cheyenne, WY 82009.  According to its most recent

corporate annual report, Foreclosure Secrets Corp.'s President, Secretary, Treasurer and Director

is an individual by the name of Samuel Park.

3.      Defendant PWA is a company operating with a South Dakota mailing address at

401 E. 8th Street, Sioux Falls, SD 57103, although it does not appear to be currently registered to

do business with any Secretary of State.

4.      Upon information and belief, PWA appears to be an unregistered fictitious name

and/or the alter ego of an individual named Zachary Miller who resides at 2406 Stone View

Drive, Sparks, NV 89436-4646.  Mr. Miller is listed on the PWA website as the "Corporate

Owner" of PWA and is identified on PWA press releases as the contact for PWA.

5.     Defendant ROAS is a for-profit corporation registered in the State of Wyoming with a principal office address located at 2232 Dell Range Boulevard, Suite 245-3629, Cheyenne, WY 82009.  Just like Foreclosure Secrets Corp., according to its most recent corporate filing, ROAS's President, Secretary, Treasurer and Director is an individual by the name of Samuel Park.

6.     Defendant Michael Esperas is an individual who resides at 856 S. Cottontail Lane, Anaheim, CA 92808-1409.

## JURISDICTION AND VENUE

7.     This amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

8.     This Court has jurisdiction over Diamond Law's false advertising claims pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

9.     This Court has supplemental jurisdiction over Diamond Law's state law claims that arise under the laws of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. § 1367, because those state claim claims are so factually related to Diamond Law's Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because it is where a substantial part of the property that is the subject of the action is situated.

11.    The Court has personal jurisdiction over Defendants under 42 Pa. C.S. § 5322(a)(4) and the United States Constitution because Defendants have caused harm or tortious

3

injury to be suffered by Diamond Law within the Commonwealth of Pennsylvania by their acts or omissions outside the Commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS

12.     Diamond Law was formed in 2009 and initially provided: (1) professional services renegotiating loans on behalf of property owners who were struggling following the 2008 bursting of the housing bubble and the related subprime mortgage crisis and (2) education on loan modifications for real estate investors.

13.     After looking for a new education product to offer, Diamond Law licensed and began promoting an overages education course in 2014.

### General Overview of the Overages Business

14.     In general, the overages business involves pursuing excess money paid at a tax sale, mortgage foreclosure sale or similar forced governmental auction or sale of real estate.

15.     While every state has differing laws and procedures governing overages and auction procedures, there are substantial similarities to the process in most states.

16.     For example, there may be a lien on a property because of unpaid taxes or a mortgage that is in default.  At a governmental foreclosure auction, the winning bidder may pay substantially more than the lien amount to buy the property.  If, say, a winning bidder paid $100,000 for a property with a $10,000 lien, the $90,000 excess is referred to as an "overage."

17.     Generally, the governmental entity that conducted the sale or auction holds the overage money for a specified limited period depending on the state.  During that period, prior owners and mortgage holders can contact the governmental entity involved, apply and receive the overage.  However, most governmental entities do not make any efforts to proactively track

4

down those past owners or interest holders to notify them there is money to claim and to explain the process.   As a result, most foreclosed property owners have no idea there is any money they could claim.  If the relevant period passes before any interested party claims an overage, the government keeps the money.

18.    Therefore, past owners and interest holders, many of whom are unaware of the existence of the overage funds, are on a strict timeline to make a claim for any overage on their property.  If they fail to formally apply in a timely fashion, the funds escheat (in other words, are forfeited) to the government.

19.    Those in the overages business work to identify and locate those past owners and interest holders, alert them there is money to claim and then assist them in making a claim for the overage funds in exchange for a share of the overage.

**Diamond Law and Foreclosure Academy Are Direct Competitors**

20.    Diamond Law has been successfully operating an overage education business from 2014 to the present.

21.    Diamond Law has four main courses that it offers to the public: (a) an online sales presentation to learn about the overage business; (b) an online course called "Overages Blueprint" covering how to start and run an overages business; (c) a four-day immersive live event where attendees learn the overages business live from the Diamond Law team; and (d) a one-year one-on-one coaching and consulting program called Protégé which offers direct help to customers in starting their overages businesses.

22.    Foreclosure Academy is a direct competitor of Diamond Law's and has four primary public offerings, three of which directly mirror Diamond Law's offerings.  Foreclosure

5

Academy's offerings include the following: (a) an online sales presentation to learn about the overages business; (b) a book called "Foreclosure Overages for Dummies;" (c) a course called "Foreclosure Secrets" covering how to start and run an overages business; and (d) a coaching and consulting program called "Foreclosure Academy Fast Track" sold over the phone and delivered remotely.

23.    Foreclosure Academy's "Foreclosure Secrets" offering directly competes with Diamond Law's Overages Blueprint course.

24.    Foreclosure Academy's "Foreclosure Academy Fast Track" offering directly competes with Diamond Law's Protégé program.

**In 2024, Diamond Law Caught Foreclosure Academy Misappropriating Diamond Law's Marketing and Other Assets to Falsely Advertise and Unfairly Compete; Foreclosure Academy Claimed at the Time that It Would Not Happen Again.**

25.    In 2024, Diamond Law discovered that Foreclosure Academy was making extensive unauthorized use of Diamond Law's intellectual and other property.  Specifically, Foreclosure Academy's online advertisements posted on platforms such as YouTube and Facebook extensively misappropriated screenshots of checks from Diamond Law's educational and marketing videos to falsely enhance Foreclosure Academy's credibility and business track record, representing that overages checks shown were the result of Foreclosure Academy and its students' efforts, when the vast majority of them were, in fact, the result of Diamond Law's work in **its own** overages business or received by Diamond Law's students in their overages businesses.

26.     Diamond Law, through counsel, served Foreclosure Academy with a cease-and-desist letter on August 6, 2024, demanding, among other things, the immediate removal of all infringing material and cessation of false claims.

27.     On August 9, 2024, Samuel Park, currently the sole President, Secretary, Treasurer and Director of both Foreclosure Academy and ROAS, responded to Diamond Law's cease and desist letter, stating "we've taken down any and all assets from our marketing resources and our website that belong to …. Diamond Law Center."  *See* August 9, 2024 e-mail from Samuel Park attached hereto as Exhibit "A."

28.     Foreclosure Academy claimed at the time that "[w]e did not know that our graphic designer who is based in Asia was utilizing these assets."  *Id.*

29.     Foreclosure Academy further assured Diamond Law in August 2024 that "we've taken time to educate the graphic designer to ensure that this doesn't happen again in the future."  *Id.*

**Despite Its Prior Assurances, Foreclosure Academy, Now Acting in Concert with PWA, Mr. Miller, ROAS and Mr. Esperas, Is Once Again Misappropriating Diamond Law's Property to Falsely Advertise and Unfairly Compete in 2026**

30.     Less than two years after pledging that nothing similar would ever happen again, Foreclosure Academy, as part of a coordinated effort with PWA, Mr. Miller, ROAS and Mr. Esperas, resumed making widespread unauthorized use of intellectual property, images, likenesses and other property belonging to Diamond Law including, but not limited to, Diamond Law Center's marketing assets, customer materials, educational content, contracts/forms and student success imagery.

7

31.     Foreclosure Academy, aided and abetted by PWA, Mr. Miller, ROAS and Mr. Esperas, are misappropriating Diamond Law's property to unfairly compete with Diamond Law and promote Foreclosure Academy's competing products and services.

32.     The marketing assets belonging to Diamond Law that are being wrongfully utilized by Defendants include check images of overages checks recovered by Diamond Law and its students, images of Diamond Law students and even images of Bob Diamond (a principal of Diamond Law).

33.     The misappropriated marketing assets have been used by Foreclosure Academy to promote its products and services in paid advertisements on Facebook and other online platforms, on sales videos posted on the internet by Foreclosure Academy and PWA and on videos posted on Mr. Esperas' Facebook page.

34.     Defendants have wrongfully utilized a common set of stolen images shared amongst them in their marketing and promotion of Foreclosure Academy's products and services.

35.     Foreclosure Academy has also taken educational content, including contracts and forms, from Diamond Law's overages education courses without permission and incorporated them into the Foreclosure Academy's course materials.

36.     PWA maintains a website, www.privatewealth.academy, on which its promotes Foreclosure Academy and its products and services.

37.     PWA also has its own custom sales video promoting Foreclosure Academy.  That PWA sales video uses, without permission, marketing assets belonging to Diamond Law, including images of checks obtained by Diamond Law and its students which have been used in Diamond Law's own advertising.

38.     ROAS functions as an advertising agency working on behalf of both Foreclosure Academy and PWA and which, upon information and belief, created and placed advertisements

8

which make wrongful use of Diamond Law's property.  Foreclosure Academy asserts on its website that it is "powered by" ROAS and ROAS claims on its website that PWA is one of its clients.

39.     Mr. Esperas runs a Facebook page, https://www.facebook.com/mikeesperasoverages/, on which he endorses Foreclosure Academy products, services and training and directs prospects to Foreclosure Academy sales materials, such as videos, where they are encouraged to buy overages educational material from Foreclosure Academy.  Videos posted on the Mike Esperas Facebook page also display numerous assets stolen from Diamond Law to promote Foreclosure Academy.  Those same images are also utilized by Foreclosure Academy and PWA.

40.     Mr. Esperas also has a Facebook Ads account that has run ads promoting Foreclosure Academy that contain Diamond Law's images, including checks and photos of Diamond Law students, that are being used without permission and to create a false impression of Foreclosure Academy and its students' success in the overages business.

41.     The https://www.facebook.com/mikeesperasoverages/ Facebook page is geared exclusively to promoting Foreclosure Academy and its course offerings.  It has over 10,000 followers.  The first video a visitor sees on that page is a nearly six-minute-long video that displays images of at least nineteen checks from overages recoveries made by Diamond Law or its students.

42.     Diamond Law has identified 111 unique check images currently being used by Defendants, of which at least 109 belong to Diamond Law.

43.     Diamond Law has identified 324 separate uses of Diamond Law's 111 unique check images by Defendants.

44.     PWA falsely asserts on its website www.privatewealth-academy-foreclosure-secrets that the images of Diamond Law students and the checks they obtained are "Some of Our Students," rather than Diamond Law's students.

9

45.    Foreclosure Academy similar falsely asserts on its website that the "sales figures" depicted are its own sales figures or that of previous or existing Foreclosure Academy clients when, in fact, the images and checks depicted on Foreclosure Academy's website are nearly exclusively those of Diamond Law or its students.

46.    Foreclosure Academy claims on its website that it has "10,000+ customers."

47.    Many, if not most, of the customers obtained by Foreclosure Academy were obtained through the wrongful and misleading use of materials belonging to Diamond Law.

48.    If not for Foreclosure Academy's unfair competition, aided and abetted by PWA, Mr. Miller, ROAS and Mr. Esperas, many of the customers wrongfully obtained by Foreclosure Academy, would have become customers of Diamond Law instead.

49.    The customers lost by Diamond Law to Foreclosure Academy as a direct result of Foreclosure Academy's unfair competition has caused substantial monetary damage to Diamond Law through reduced attendance in its courses and live events, resulting in fewer sales of its products and services, and endangers the continued viability of Diamond Law's business.

50.    Diamond Law competes with Foreclosure Academy for advertisement placements on Facebook, Google and other on-line ad platforms.  Those ad platforms utilize an auction model whereby advertisers competitively bid for ad placements.  Foreclosure Academy competing with Diamond Law for ad placement with images and material misappropriated from Diamond Law causes Diamond Law to have to pay higher costs for its advertising than if Foreclosure Academy were competing fairly.

## COUNT I-INJUNCTIVE RELIEF BY WAY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

51.    Diamond Law incorporates by reference the averments of the preceding paragraphs as if set forth at length herein.

10

52.     There is a substantial likelihood that Diamond Law will succeed on the merits of its claims against Defendants.

53.     Diamond Law will suffer immediate and irreparable harm if Defendants' unlawful conduct remains unabated.

54.     The irreparable harm Diamond Law will suffer by denying its request for injunctive relief outweighs any harm that Defendants will suffer because of the issuance of immediate injunctive relief.

55.     The public interest will be best served by the entry of injunctive relief.

**WHEREFORE**, Plaintiff Diamond Law, LLC respectfully requests that this Honorable Court enter temporary, preliminary and permanent injunctive relief in its favor and against Defendants barring them from any unauthorized use of Diamond Law's marketing or educational content and awarding such additional damages permitted by law, together with interest, costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1051 et seq.

56.     Diamond Law incorporates by reference the averments of the preceding paragraphs as if set forth at length herein.

57.     Foreclosure Academy, assisted and aided by PWA, Mr. Miller, ROAS and Mr. Esperas, falsely advertised that results actually achieved by Diamond Law and its students were results achieved by Foreclosure Academy and/or its students.

58.     The advertising done by Foreclosure Academy, and by PWA, Mr. Miller, ROAS and Mr. Esperas on Foreclosure Academy's behalf, actually deceived or, at the least, had a tendency to deceive, their intended audience.

11

59.     The disclaimer utilized by Foreclosure Academy that "sales figures" shown on their webpage are their sales figures or those of their previous or existing clients is affirmatively false and misleading.

60.     PWA's posting on its website stating, "Some of Our Students," accompanied by images of Diamond Law's students and checks obtained by Diamond Law and/or its students is affirmatively false and misleading.

61.     The deception in the false advertising done by Defendants is material in that such deception influences the decisions of prospective clients to engage the services of Foreclosure Academy when it is actually the successful track record of its direct competitor, Diamond Law, that Defendants are using to generate business for Foreclosure Academy.

62.     The engagements of Foreclosure Academy that occur as a result of the false advertising by Defendants affect interstate commerce.

63.     The false advertising by Defendants occurs primarily on the internet and affects interstate commerce.

64.     The false advertising by Defendants has caused monetary damage to Diamond Law at its principal place of business in Pennsylvania.

65.     The false advertising by Defendants has injured, and is likely to continue to injure, Diamond Law by causing a decline in Diamond Law's revenue, loss of goodwill, and other harm in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Diamond Law, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants finding that they have violated the Lanham Act and awarding compensatory damages to Diamond Law for those compensatory and

consequential damages sustained by Diamond Law, together with interest, costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

### COUNT III - PENNSYLVANIA COMMON LAW — UNFAIR COMPETITION

66.    Diamond Law incorporates by reference the averments of the preceding paragraphs as if set forth at length herein.

67.    Defendants have each engaged in false, deceptive and dishonest conduct that is contrary to honest business practices and have thus engaged in unfair competition in violation of the common law of the Commonwealth of Pennsylvania.

68.    The acts of Defendants were calculated to procure an unfair competitive advantage for Foreclosure Academy.

69.    The unfair methods of competition being utilized by Defendants have caused Diamond Law to suffer monetary damages.

70.    The actions taken by Defendants, as described herein, constitute unfair and deceptive methods of marketing and competition, taking into account the nature of the conduct and its effect on both Diamond Law and the public.

71.    Defendants have engaged in the aforementioned acts willfully and deliberately and their conduct has caused monetary injury to Diamond Law.

**WHEREFORE**, Plaintiff Diamond Law, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants finding that they have engaged in unfair competition and awarding compensatory damages to Diamond Law for those compensatory and consequential damages sustained by Diamond Law, together with interest, costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

13

## COUNT IV- PENNSYLVANIA COMMON LAW — CIVIL CONSPIRACY

72.    Diamond Law incorporates by reference the averments of the preceding paragraphs as if set forth at length herein.

73.    Defendants combined and agreed with malicious intent to harm Diamond Law and to engage in unlawful overt acts and achieve objectives by the unlawful means described above, all to the intended financial detriment of Diamond Law.

74.    Diamond Law suffered monetary damages as a result of the acts of the Defendants, all done in furtherance of their common intentional and knowing plan and design.

75.    The actions of Defendants were intentional, willful, malicious, wanton and outrageous, warranting and justifying the award of punitive damages.

**WHEREFORE**, Plaintiff Diamond Law, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants finding that they have engaged in civil conspiracy and awarding compensatory damages to Diamond Law for those compensatory and consequential damages sustained by Diamond Law, together with interest, costs, attorneys' fees and punitive damages, and such other and further relief as the Court deems just and proper.

## COUNT V – CONVERSION

76.    Diamond Law incorporates by reference the averments of the preceding paragraphs as if set forth at length herein.

77.    Defendants converted property belonging to Diamond Law by their unauthorized and unlawful use of Diamond Law's property for their own purposes and their own monetary gain.

14

78.     The conversion by Defendants was intentional, willful, malicious, wanton and outrageous, and without lawful justification or the consent of Diamond Law, warranting and justifying the award of punitive damages.

79.     As a result of such conversion by Defendants, Diamond Law has suffered significant monetary damages.

**WHEREFORE**, Plaintiff Diamond Law, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants finding that they have engaged in conversion and awarding compensatory damages to Diamond Law for those compensatory and consequential damages sustained by Diamond Law, together with interest, costs, attorneys' fees and punitive damages, and such other and further relief as the Court deems just and proper.

## COUNT VI – UNJUST ENRICHMENT

80.     Diamond Law incorporates by reference the averments of the preceding paragraphs as if set forth at length herein.

81.     As set forth above, Foreclosure Academy, aided by PWA, Mr. Miller, ROAS and Mr. Esperas, utilized deceptive acts and practices to obtain customers through the unauthorized use of Diamond Law's marketing assets and other property.

82.     Foreclosure Academy and the other Defendants willingly accepted and retained the monetary benefits of their deceptive and otherwise wrongful acts and practices.

83.     It would be unjust and inequitable for Defendants to retain the monies and revenues they secured as a result of their wrongful conduct to the detriment of Diamond Law.

84.     Thus, as a result of their own unlawful and inequitable acts, Defendants have been unjustly enriched to the detriment of Diamond Law.

15

85.     As a result of such unjust enrichment, Diamond Law has suffered substantial financial losses.

86.     Diamond Law demands restitution, disgorgement and judgment against Defendants in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Diamond Law, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants finding that they have been unjustly enriched and awarding compensatory damages to Diamond Law for those compensatory and consequential damages sustained by Diamond Law, together with interest, costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**MITTS LAW, LLC**

Dated: June 23, 2026

 /s/ Maurice R. Mitts
Maurice R. Mitts, Esquire
Geoffrey Paul Huling, Esquire
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
ghuling@mittslaw.com

*Counsel for Plaintiff Diamond Law Center, LLC*

16

# EXHIBIT A

**April Gary**

| | |
|---|---|
| **From:** | Foreclosure Academy <contact@foreclosure.academy> |
| **Sent:** | Friday, August 9, 2024 9:10 PM |
| **To:** | Maurice Mitts |
| **Cc:** | Geoffrey Huling; Ruvin Jayasuriya; Jennifer Adams; Mary Ellen Copeland |
| **Subject:** | Re: Cease and Desist Demand for Unauthorized Use of Intellectual Property and Fraudulent Misrepresentation |

Hello Maurice,

I apologize for the trouble we may have caused Mr. Robert Diamond, Scout Publishing Services LLC, and Diamond Law Center, LLC.

After we received your email, we've taken down any and all assets from our marketing resources and our website that belong to Mr. Robert Diamond, Scout Publishing Services LLC, or Diamond Law Center, LLC.

We did not know that our graphic designer who is based in Asia was utilizing these assets. With that, upon receiving your notice, we took immediate action to remove the assets. In addition to that, we've taken time to educate the graphic designer to ensure that this doesn't happen again in the future. Overall, the campaign operated at a loss and it's been turned off.

We meant no harm to Mr. Robert Diamond, Scout Publishing Services LLC, or to Diamond Law Center, LLC. I want to confirm again by saying we've taken down all of the assets.

I want to repeat by saying we apologize again and we've destroyed all marketing materials that might relate to the above as of August 9th, 2024.

Thank you for your time,
Sam Park

On Tue, Aug 6, 2024 at 4:29 PM Maurice Mitts <MMitts@mittslaw.com> wrote:

Please see the attached correspondence regarding the above referenced matter.

Thank you,

Maurice

Maurice R. Mitts, Esq.

Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103

1

T (215) 866-0112
F (215) 866-0113

C (215) 327-7744

mmitts@mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.